Filed 1/7/25  P. v. Robles CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100240 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE001497) |
| v. | |
| MIGUEL ROBLES, | |
| Defendant and Appellant. | |

A jury found defendant Miguel Robles guilty of five counts of attempted murder, two counts of criminal threats, and one count of carrying a loaded firearm in public. On appeal, Robles contends there was insufficient evidence to support two of the attempted murder convictions. We disagree and will affirm the judgment.

1

# FACTUAL BACKGROUND[1]

In January 2022, Robles, his brother, and two other men went to a nightclub to hear a band play. B.M. and C.G. were at the nightclub promoting the band, and R.A. worked there as a security guard.

Robles and his companions ordered alcoholic drinks, and Robles drank an entire bottle of whiskey. Robles took pictures with the band because he was a fan, but became angry when B.M. asked him to leave the stage. Robles complained to his companions, who all became angry at B.M. for not allowing Robles to stay on the stage. One of the companions pushed B.M. R.A. saw what was happening and told Robles and his companions to leave the nightclub. When they ignored R.A., R.A. stepped between them and B.M. to separate them. Two of Robles' companions seemed to calm down, but Robles did not. R.A. escorted the two calmer men toward the front doorway, which had clear plastic blinds hanging from it, while Robles stayed on the dance floor.

Just before they reached the front door, however, one of Robles' companions elbowed R.A. in the jaw and a fight commenced between the men and the security guards, including R.A. C.G., who was at the bar, went to the front door and saw Robles run to join the fight. Once Robles and his companions were all together by the front door, C.G., B.M., and another security guard ushered them out of the club. One of the men with Robles encouraged him to get a gun and kill them. As Robles walked out the door, he said, "I'm going to come back. I'm going to grab my gun and start shooting at you guys, kill you guys."

R.A. stood just inside the front door to make sure Robles and his companions did not try to re-enter while C.G. and B.M. followed them out the front door and onto the

---

[1]     Because Robles claims the jury lacked sufficient evidence to find him guilty of the attempted murders of C.G. and R.A., we set forth the facts in the light most favorable to the judgment. (*People v. Lee* (2011) 51 Cal.4th 620, 625, fn. 5.)

patio to make sure they left.  Once outside, C.G. asked B.M. if the men really had guns, and when B.M. said they did, C.G. made his way slowly back inside the nightclub.  B.M. saw Robles and the other men go to their truck and grab a gun, so he also walked back toward the nightclub to get inside.

While Robles walked toward the nightclub with his gun, one of Robles' companions punched R.A. in the face through the plastic curtain causing the strips of the curtain to swing back and forth, making the man who punched him visible to R.A.  Approximately two or three seconds after R.A. was punched, he heard the nightclub host yell, "He's got a gun."  R.A. did not try to flee but immediately threw himself onto the ground and felt a bullet graze his calf.  After Robles shot him, R.A. removed his security guard shirt to avoid being identified by Robles.  C.G. heard people screaming as he was walking into the nightclub and in "a split second," he turned around, saw Robles with the gun, and felt a gunshot hit his ankle.  Then, C.G. saw B.M. closing the front door.  As B.M. closed the front door from the inside, he and Robles faced each other, and Robles shot him in the left arm.  In total, Robles fired his gun five times toward the front door.

Outside the nightclub, Y.M. and D.R. were working at a taco stand in the parking lot.  Y.M. saw Robles shoot toward the nightclub's front door from the patio.  After Robles stopped shooting, he walked up to the taco stand, stood two feet from Y.M., and said, "You're next."  Y.M. responded, "Why me?  I didn't do nothing."  Robles replied, "You work here" and pointed the gun at Y.M.'s head.  He pulled the trigger but Y.M. only heard a click.  Then, Robles pointed the gun at D.R.'s stomach and pulled the trigger, but the gun clicked again.  Robles repeated, "I'm going to kill you" until the men who were with Robles pulled up in the truck.  As Robles got into the truck, he said, "I'm going to come back to kill you."

An amended information charged Robles with the attempted murders (Pen. Code, §§ 664/187, subd. (a))**2** of C.G. (count one), B.M. (count two), R.A. (count three), Y.M. (count four), and D.R. (count five); criminal threats (§ 422) against Y.M. (count six) and D.R. (count seven); and carrying a loaded firearm in public (§ 25850, subd. (a); count eight). The information alleged Robles committed counts one, two, and three with premeditation and deliberation. The information also alleged firearm enhancements as to counts one through seven.

A jury found Robles guilty of all counts and found true all allegations. At sentencing, the trial court imposed an aggregate determinate term of 42 years eight months consecutive to an indeterminate term of 71 years to life.

## DISCUSSION

Robles contends the evidence is insufficient to support his convictions for the attempted murders of C.G. and R.A. Specifically, he argues the evidence was insufficient to prove he committed a specific act toward killing C.G. and R.A. with the specific intent to kill each respectively because he only shot C.G. and R.A. in the process of shooting at B.M. We disagree and will affirm the judgment.

In addressing a claim of insufficient evidence, we " ' " 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence [that] is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citation.] . . . [Citation.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Logical inferences the jury may have drawn must be accepted, including inferences drawn from circumstantial evidence. (*People v. Maury* (2003)

---

**2**     Undesignated statutory references are to the Penal Code.

4

30 Cal.4th 342, 396.)  We do not reweigh or settle conflicts in the evidence, nor do we assess the credibility of witnesses.  (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

Attempted murder requires " 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' "  (*People v. Smith* (2005) 37 Cal.4th 733, 739.)  Because there rarely is direct evidence of a defendant's mental state, the intent to kill ordinarily may be inferred from the defendant's acts and the underlying circumstances.  (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.)  "Intent to unlawfully kill and express malice are, in essence, 'one and the same.' "  (*Smith*, at p. 739.)  "Express malice requires a showing that the assailant ' " 'either desire[s] the result [i.e., death] or know[s], to a substantial certainty, that the result will occur.' " ' "  (*Ibid*.)  And "where there are multiple possible victims of the attempted murder, the prosecution must establish that defendant intended to kill each victim for each count charged."  (*People v. Virgo* (2013) 222 Cal.App.4th 788, 798.)

Viewed in the light most favorable to the judgment, we conclude substantial evidence supports Robles' conviction for the attempted murder of R.A.  Robles fired five shots toward the front door of the nightclub, where R.A. was standing immediately before Robles started shooting.  While R.A. was standing on the inside of the clear blinds at the front door, one of the men with Robles could still see him clearly enough to punch him in the face from the outside.  Then, when the blinds were moving, R.A. could see clearly outside.  If R.A. could see outside the nightclub, it stands to reason that Robles could see R.A. when he shot him.  Thus, Robles took an ineffectual step toward killing R.A.  Further, Robles shooting at R.A. demonstrates an intent to kill stemming from his anger at R.A. for kicking him out of the nightclub.  Robles was a fan of the band playing at the nightclub that evening and was angry at R.A. for intervening and telling him to leave.  The jury could also infer Robles was angry at R.A. because of the fight that broke out when R.A. escorted two of Robles' companions, including his brother, to the front door.

Similarly, substantial evidence supports Robles' conviction for the attempted

murder of C.G. The jury could infer Robles saw C.G. when he turned to go back inside the nightclub after following Robles outside. C.G. had just walked in the door when he turned and saw Robles standing outside with a gun even though there were clear blinds hanging in the doorway and other people trying to get back inside. If C.G. could see Robles, it stands to reason Robles could also see C.G. through the front door when he fired the gun in his direction, striking him. Again, Robles shooting at C.G. demonstrates an intent to kill him stemming from his anger that C.G. actively ushered him and the other men out of the nightclub and walked out with B.M. to make sure they were leaving. After Robles was pushed out, he said, "I'm going to come back. I'm going to grab my gun and start shooting at you guys, kill you guys."

Under these circumstances, therefore, the evidence was sufficient to support Robles' convictions for the attempted murders of R.A. and C.G.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
EARL, P. J.

We concur:


_____/s/_____
RENNER, J.


_____/s/_____
KRAUSE, J.